STANLEY FERBER, TRUSTEE OF THE VIRGINIA
D'ADDARIO SPRAY TRUSTS *v.* TILCON
CONNECTICUT, INC.
(AC 17284)

Schaller, Sullivan and Shea, Js.

Argued October 1—officially released November 10, 1998

*Allan M. Cane,* for the appellant (plaintiff).

*H. James Stedronsky,* for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Stanley Ferber, Trustee of the Virginia D'Addario Spray Trusts, appeals from the judgment of the trial court denying his request for specific performance of a lease-sales agreement. We affirm the judgment of the trial court.

In May, 1974, the defendant's predecessor in interest, Ashland Oil Company, and F. Francis D'Addario executed two separate leases with mandatory purchase provisions for two asphalt plants, one located in Newtown and one in Danbury. In 1976, F. Francis D'Addario conveyed a 50 percent interest in the properties to five separate spray trusts for the benefit of his children. One of the children is deceased so that the four surviving children own the 50 percent interest in the properties in equal shares of 12 1/2 percent each. The remaining 50 percent interest in each property is held by the estate of F. Francis D'Addario, who died in 1986.

The sole issue in this appeal is whether the defendant must purchase a fractional interest in the properties under the terms of these leases.

Both leases called for an original term of twenty years with three renewals of ten years each. In the Newtown lease, this provision was set out in paragraph eighteen, and in the Danbury lease this provision was set out in paragraph sixteen. The Danbury lease provides as follows:

"16. REQUIRED PURCHASE

22

"At the end of the Primary Term of this Lease if Lessee elects not to exercise its option to extend this Lease in accordance with Paragraph 15 hereof, or at the termination of this Lease after the option or options to extend this Lease have been exercised, Lessee shall be obligated to purchase the Premises and the structures and improvements located thereon at a purchase price equal to the then fair market value of the Premises as an existing use permissible at that time under the Lease determined on the basis of the average of three separate appraisals; provided, however, that Lessee shall not be obligated to purchase the Premises in the event it elects to terminate this Lease pursuant to Paragraph 14 hereinabove. One of such appraisers shall be appointed by Lessor, one by Lessee and the third shall be appointed by the other two appraisers so appointed. All such appointments shall be made within sixty (60) days after the expiration of an option to renew by failure to exercise the same or if all options are exercised, within sixty (60) days prior to the expiration of the third renewal period." The Newtown lease contained the same essential terms except for the location of the property involved.

Both leases gave the defendant lessee two choices at the end of each term. It could either purchase the properties described therein or extend the lease for another term. In any event, after the original lease period and the three extension periods expired, the defendant was required to purchase the properties in accordance with the required purchase provisions of the lease. As the end of the original lease term approached, the defendant notified the lessor that it intended to exercise its right of purchase under said leases. None of the property owners, with the exception of the plaintiff, wanted to sell their interests. The plaintiff sought to have the defendant buy her one-eighth interest in the properties. The defendant refused to do

so and instead signed an amendment to each lease with all of the owners except the plaintiff. As a result, the defendant has an amended lease for 87 1/2 percent of the ownership interest in each property. The plaintiff owns the remaining 12 1/2 percent in each property for which there is no lease agreement. The amendments to each lease provided more favorable terms to the defendant than does the original lease.

The plaintiff now seeks specific performance of the terms of the original leases, asking the court to mandate that the defendant purchase the trust's one-eighth interest in each property and the structures and improvements located thereon. "If the parties have reduced their agreement to a writing, their intent 'is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intent existed in the minds of the parties but what intention is expressed in the language used.' " *Tomlinson* v. *Board of Education*, 226 Conn. 704, 722, 629 A.2d 333 (1993). "In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) Id.

We agree with the trial court that the only reasonable interpretation of the lease is that the defendant's obligation to purchase becomes mandatory only if 100 percent of the property is sold. The defendant is not required to purchase a fractional share of the properties. Therefore, the trial court was correct when it denied the plaintiff's

request for specific performance of the purchase agreement.

The judgment is affirmed.